1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11  JACOB WINDING dba TOP TO BOTTOM          CASE NO. 1:11-cv-00555-AWI-SKO
    CLEANING SERVICE,
12

13              Plaintiff,                    **FINDINGS AND**
                                             **RECOMMENDATIONS THAT**
14       v.                                  **WELLS FARGO'S MOTION FOR**
                                             **ATTORNEY'S FEES BE GRANTED**
15
    WELLS FARGO BANK, a National             **(Doc. No. 40)**
16  Association, et al.,

17              Defendants.                   **FINDINGS AND**
                                             **RECOMMENDATIONS THAT**
18                                           **PLAINTIFF'S MOTION FOR RELIEF**
                                             **FROM JUDGMENT PURSUANT TO**
                                             **RULE 60(b) BE DENIED**
19
20                                           **(Doc. No. 43)**
21                                           **OBJECTIONS DUE:  21 DAYS**
    _____/
22

23              **I.   INTRODUCTION**

24       On September 30, 2011, judgment in this case was entered in favor of Defendants Wells

25  Fargo Bank, N.A., and Cal-Western Reconveyance ("Defendants").  On October 28, 2011, Defendant

26  Wells Fargo, N.A. filed a motion for attorney's fees.  (Doc. 40.)   On February 2, 2012, after

27  reviewing the parties' briefs and the supporting documentation, the Court determined that the motion

28  was suitable for consideration without oral argument pursuant to the United States District Court for

the Eastern District of California's Local Rule 230(g), and the February 8, 2012, hearing was vacated. For the reasons set forth below, the Court RECOMMENDS that Wells Fargo's motion for attorney's fees be GRANTED and that Plaintiff's motion for relief from judgment pursuant to Rule 60(b) be DENIED.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

On March 3, 2011, Plaintiff, "Jacob Winding dba Top To Bottom Cleaning Service," filed a complaint in Stanislaus County Superior Court alleging claims against Wells Fargo Bank, N.A. ("Wells Fargo") and Cal-Western Reconveyance Corporation ("Cal-Western") for monetary damages, declaratory and injunctive relief, and to quiet title of real property located at 302 California Avenue, Modesto, California (the "Property"). The prior owners of the Property were Warner and Iris Bowers. As documented by Defendants' Exhibits that were judicially noticed by the district court, on May 29, 2007, World Savings Bank[1] loaned $217,000 (the "Loan") to Warner and Iris Bowers secured by a first trust deed against the Property ("2007 Trust Deed"). (Doc. 8, Exh. A.)

A Notice of Default on the Loan was recorded on May 27, 2009, by Cal-Western on behalf of Wachovia Mortgage. (Doc. 8, Exh. H; Doc. 54, Exh. C.) The Notice of Default lists Warner and Iris Bowers as trustors on the 2007 Trust Deed. On August 18, 2009, another deed of trust was recorded indicating that Warner Bowers deeded his interest in the Property to "TTB Services, Inc." to secure payment in the amount of $75,000. (Doc. 8, Exh. G; Doc. 54, Exh. A.) On December 4, 2009, the Property was transferred by quitclaim deed from Warner and Iris Bowers to "TTB Services, Inc."[2] The quitclaim deed was recorded on December 7, 2009. (Doc. 8, Exh. I.) A Notice of Trustee's Sale was recorded on February 25, 2010, indicating that the sale of the Property would occur on March 17, 2010. (Doc. 8, Exh. J.) On April 1, 2010, title to the Property was transferred by a "Corporation Grant Deed" from TTB Services, Inc. to Top to Bottom Cleaning Service, a

---

[1] World Savings Bank, FSB, changed its name to Wachovia Mortgage, FSB on December 31, 2007. (Doc. 8, Exh. C.) Thereafter, the Comptroller of the Currency certified the change of Wachovia Mortgage to Wells Fargo Bank Southwest and the merger of Wells Fargo Bank, Southwest with and into Wells Fargo Bank, N.A. on November 1, 2009. (Doc. 8, Exh. E.)

[2] As noted by the Court in its June 27, 2011, motion to dismiss, it appears that Jacob Winding is the Sole proprietor of TTB Services, and is a principle partner or partner of Top to Bottom Cleaning Service. (Doc. 22, 6:7, n.1.)

partnership.  (Doc. 8, Exh. K; Doc. 54, Exh. B.)  As an exhibit to the complaint, Plaintiff included a copy of Top to Bottom Cleaning Service's Partnership Agreement.  The individuals named as partners to the agreement include: Franklin Rosario, Vanessa King, Gloria Rosario, Kimbly Khan, Jacob Winding, Zanghoona Sanger, Ronald Jacquet, Frederick King, and Stephanie Jacquet. (Doc. 1, Exh. B, p. 26-28.)  The complaint alleges that the actual Trustee's Sale occurred on or about February 28, 2011. (Doc. 1, p. 14, ¶ 15.)

Based on these facts, Plaintiff essentially asserted that Defendants lacked the authority to declare default and order the sale of the Property because Defendants did not hold both the promissory note and the deed of trust at the time they took those actions.  Plaintiff also alleged that he did not receive notice of the sale of the Property pursuant to the California Civil Code. (*See* Doc. 22, 6:9-20.)

Defendants removed Plaintiff's complaint to this Court on April 4, 2011.  At the time Plaintiff filed his initial complaint, neither he nor Top to Bottom Cleaning Service was represented by counsel.  On April 19, 2011, Defendants filed a motion to dismiss the complaint and a motion to strike portions of the complaint.  (Docs. 6, 7.)  On May 9, 2011, attorney Vernon Goins, Esq. made an appearance on behalf of "Plaintiff Jacob Winding dba Top to Bottom Cleaning Service" by filing an opposition to Defendants' motion to dismiss and motion to strike.  (Doc. 9.)

On May 13, 2011, however, Mr. Goins filed a motion to withdraw as Plaintiff's counsel. (Doc. 11.)  On June 10, 2011, Mr. Goins was permitted to withdraw as counsel of record for Plaintiff. (Doc. 20.)  On June 27, 2011, Plaintiff's complaint was dismissed and he was granted leave to file an amended complaint. (Doc. 22.)  In dismissing Plaintiff's complaint, the district court noted two limitations on any amendment:

> First, in this case the court is aware that Jacob Winding was representing Plaintiff *in pro per* at the time the complaint was filed in Stanislaus County Superior Court.  Plaintiff was represented by counsel as of the time opposition was filed to Defendants' motion to dismiss, so the issue of Jacob Winding's authority to represent Top to Bottom Cleaning Service did not arise.  The court notes that recently Plaintiff's attorney of record has asked for, and been granted, permission to withdraw from the case.  Having not received any notice of substitution of counsel, the court presumes Plaintiff is without counsel as of this writing.  As previously noted by the Magistrate Judge, to the extent Plaintiff in this case, Top to Bottom Cleaning Service, is a partnership, Jacob Winding is not authorized to undertake its representation in court.

> Second, the court has invalidated Plaintiff's theory that recovery can be based on the fact that Defendants did not show that they possessed any interest in the promissory note.  In Winding v. NDEX West, the court also invalidated Plaintiff's theory that he was entitled to relief on the basis of a senior deed of trust.  Neither of these theories are viable under the facts of this case and the court will summarily dismiss any amendment that alleges claims for relief that are predicated on either theory.  Plaintiff will have 21-days from the date of this order to file any amendment.

(Doc. 22, 19:10-26.)

Plaintiff failed to file an amended complaint or obtain counsel, and on September 30, 2011, the Court entered judgment in favor of Defendants and closed the case.  (Docs. 37, 38.)  Thereafter, on October 28, 2011, Wells Fargo filed its motion for attorney's fees as a prevailing party in the litigation pursuant to California Civil Code § 1717.  (Doc. 40.)  The motion seeks an award "between $23,752.00 and $24,547.00 in attorneys' fees against plaintiff Jacob Winding."  (Doc. 40, 22:2-3.)

Plaintiff responded to Wells Fargo's motion for attorney's fees by filing a document entitled "Motion by Plaintiff to Dismiss Defendants['] Motion for Attorney's Fee[s]" ("Rule 60 motion").  (Doc. 43.)  Plaintiff's response did not directly address Wells Fargo's motion for attorney's fees, but rather asserted that, pursuant to Federal Rule of Civil Procedure 60 and newly submitted evidence, the Court should reconsider the dismissal of Plaintiff's complaint and subsequent judgment.  The basis of Plaintiff's Rule 60 motion is an "affidavit"[3] of Warren Bowers stating that the debt to World Savings Bank was "cured" prior to transferring his ownership interest in the Property to TTB Services, Inc.  (Doc. 45.)

On November 30, 2011, the Court ordered Wells Fargo to submit supplemental briefing addressing whether Wells Fargo was seeking to impose attorney's fees on Jacob Winding in his individual capacity and, to the extent attorney's fees were sought as to Top to Bottom Cleaning Service, whether such fees could be awarded against an unrepresented entity.  (Doc. 47.)  On December 14, 2011, Wells Fargo submitted a supplemental brief addressing these issues.  (Doc. 48.) Although the Court permitted Plaintiff until January 9, 2011, to file a response to Wells Fargo's supplemental brief, Plaintiff failed to timely file a responsive brief.

---

[3] Although termed an "affidavit," the document is not notarized.  It is, however, declared under the penalty of perjury and thus it shall be referred to as a declaration.

On January 17, 2011, Plaintiff filed a motion seeking leave to file out of time a response to Wells Fargo's supplemental brief. (Doc. 49.) Plaintiff's request was granted, and Plaintiff's response was filed on January 17, 2012. (Doc. 52.) The Court then provided Wells Fargo an opportunity to file a reply to Plaintiff's January 17, 2011, response as well as Plaintiff's Rule 60 motion, and continued the hearing on Wells Fargo's motion until February 8, 2012. (Doc. 52.) On January 27, 2012, Wells Fargo filed a reply to Plaintiff's January 17, 2011, response and Plaintiff's November 23, 2011, Rule 60 motion. (Docs. 53, 54.)

On February 2, 2012, the Court determined the matter was suitable for decision without oral argument and vacated the February 8, 2012, hearing on Wells Fargo's motion for attorney's fees. (Doc. 55.)

### III.   DISCUSSION

### A.   Wells Fargo's Requests for Judicial Notice

Wells Fargo filed two separate requests for judicial notice pursuant to Federal Rule of Evidence 201. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Judicially noticed facts often consist of matters of public record, such as prior court proceedings. *See, e.g., Emrich v. Touche Ross & Co.*, 846 F. 2d 1190, 1198 (9th Cir. 1988) (administrative materials); *Barron v. Reich*, 13 F. 3d 1370, 1377 (9th Cir. 1994) (city ordinances); *Toney v. Burris*, 829 F. 2d 622, 626-27 (7th Cir. 1987) (geological surveys and existing land use maps); and *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a filed complaint as a public record). Documents recorded by a county recorder's office are also considered public documents of which courts frequently take judicial notice. *See, e.g., Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1057-58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust); *see also Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (collecting cases taking judicial notice of deeds of trust recorded by county recorders' offices).

1

2 **1.     Judicial Notice of 2007 Trust Deed and Promissory Note**

3        In support of its motion for attorney's fees, Wells Fargo requests that the Court take judicial

4 notice of two documents: (1) An "Adjustable Rate Mortgage Note, Pick-A-Payment Loan ("the

5 Note"), dated and signed by Warner A. Bowers and Iris L. Bowers on May 29, 2007; and (2) A Deed

6 of Trust signed on May 29, 2007, by Warner A. Bowers and Iris L. Bowers securing the Loan,

7 recorded in the official records of the Stanislaus County Recorder on June 6, 2007, as DOC-2007-

8 0075491-00.  (Doc. 41.)

9        On November 23, 2011, Plaintiff filed objections to Wells Fargo's request for judicial notice.

10 (Doc. 44.)  With regard to the Note, Plaintiff asserts that the document presented by Wells Fargo is

11 merely a copy of the actual document, and is not subject to judicial notice under Section 201(b).

12 With regard to the 2007 Trust Deed, Plaintiff asserts that a copy of the document is not subject to

13 judicial notice, and the affidavit of Mr. Bowers, submitted in support of Plaintiff's opposition, creates

14 a question as to the authenticity of the 2007 Trust Deed.  (Doc. 44.)

15        With regard to the 2007 Trust Deed, this document has already been judicially noticed by the

16 Court (Doc. 22, 3:19-24); thus the document is already a part of the record in these proceedings.  *See*

17 *Coleman v. Schwarzenegger*, Nos. CIV S-90-0520 LKK JFM P, C01-1351 THE, 2009 WL 2407404,

18 at *3 (E.D. Cal. Aug. 4, 2009) ("The court has already taken judicial notice of the *Plata* Receiver's

19 October 27, 2006, Newsletter, vol. 1, No. 4, in connection with its consideration of defendants'

20 motion for summary judgment and, as a consequence, the document is part of the record in these

21 proceedings.").  Moreover, facts contained in a public record are considered appropriate subjects for

22 judicial notice.  *See Santa Monica Food not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025

23 (9th Cir. 2006).  Finally although Plaintiff argues that Mr. Bowers' declaration clouds the "full

24 authenticity" of the 2007 Trust Deed, Mr. Bowers' statement lacks foundation and provides nothing

25 that indicates that the Deed of Trust as recorded on June 6, 2007, is not authentic.  In fact, his

26 statement acknowledges the underlying indebtedness and claims it was "cured."  For these reasons,

27 Wells Fargo's request for judicial notice with respect to the 2007 Trust Deed should be granted.

28

As to the Note, Plaintiff argues that a "copy" of this document is not the proper subject of judicial notice. (Doc. 44, 2:4-12.) Courts routinely take judicial notice of copies of documents, as opposed to the original document; the fact that it is a copy of the original does not impinge on its authenticity. The Note, however, was not recorded and is not part of the public record. Judicial notice of this document as a public record is not appropriate. However, the Promissory Note bears the same date, principal amount, terms, and Property as the Deed of Trust already noticed by the Court. Other than objecting to the document as a "copy," Plaintiff has not asserted a legitimate basis to question the authenticity or the accuracy of the document.[4] For these reasons, judicial notice of the existence of the document should be granted. *See Robertson v. Wells Fargo Home Mortg.*, No. 10-cv-1110-BR, 2011 WL 5157772, at *3 (Oct. 28, 2011) (taking judicial notice of Promissory Note that bore same material information as judicially noticed Deed of Trust).

## 2.      Wells Fargo's Request for Judicial Notice in Support of Reply

On January 27, 2011, Wells Fargo also requested that the Court take judicial notice of the following documents: (1) a Deed of Trust signed by Warner Bowers recorded on August 18, 2009 ("Exhibit A"); (2) a March 31, 2010, Corporate Grant Deed ("Exhibit B"); (3) a May 26, 2009, Notice of Default ("Exhibit C"); (4) a May 29, 2007, Deed of Trust signed by Warner A. Bowers and Iris L. Bowers ("Exhibit D"); (5) a document filed in the United States Bankruptcy Court, Eastern District of California Bankruptcy Case No. 09-91753 ("Exhibit E"); (6) a document filed in the United States Bankruptcy Court, Eastern District of California Bankruptcy Case No. 09-93402; (7) A judgment issued by the United States Bankruptcy Court, Eastern District of California in the matter *In re: Franklin Rosario*, Bankruptcy Case No. 11-02438 ("Exhibit G"); (8) An order issued on September 28, 2011, by the United States Bankruptcy Court, Eastern District of California in case No. 11-040616 entitled *In re: Vanessa King* ("Exhibit H"); and (9) an order issued on March 9, 2011, by the United States Bankruptcy Case No. 11-90506 entitled *In re Kimlyn Sardeung Kham* ("Exhibit I").

---

[4] Plaintiff also references the existence of the Promissory Note in his complaint. (*See* Doc. 1, ¶¶ 42-43, 52.) Plaintiff asserted in his complaint that Wells Fargo had failed to show that it an interest in the promissory loan relating to the subject property and the deed of trust.

With respect to Exhibits A, B, C, and D, each of these documents was judicially noticed by the Court in its order dismissing Plaintiff's complaint on June 27, 2011.  As such, these documents are already part of the record.  *See Coleman*, 2009 WL 2407404, at *3 ("The court has already taken judicial notice of the *Plata* Receiver's October 27, 2006, Newsletter, vol. 1, No. 4, in connection with its consideration of defendants' motion for summary judgment and, as a consequence, the document is part of the record in these proceedings.")

With respect to Exhibits E, F, G, H, and I, each of these documents has been filed with, or has been issued by, the United States Bankruptcy Court for the Eastern District of California.  "The existence and authenticity of a document which is a matter of public record is judicially noticeable such as the authenticity and existence of a particular order, pleading, public proceeding, or census report, which are matters of public record, but the veracity and validity of their contents (the underlying arguments made by the parties, disputed facts, and conclusions of fact) are not."  *Cactus Corner, LLC v. U.S. Dep't of Ag.*, 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004) (*citing Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001)); *see also Del Puerto Water Dist. v. U.S. Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1234 (E.D. Cal. 2003) ("Judicial notice is taken of the existence and authenticity of the public and quasi public documents listed.  To the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice.").  While it is not appropriate to take judicial notice of the facts contained in these documents, the existence and authenticity of these documents may be judicially noticed.  To that extent, Wells Fargo's request for judicial notice should be granted.

**B.    Plaintiff's Motion Pursuant to Rule 60(b) Should Be Denied**

On June 27, 2011, Plaintiff's complaint was dismissed by the Court.  (Doc. 22.)  While Plaintiff was permitted 21 days to file an amended complaint, the Court imposed two limitations on any amended complaint filed:

> First, in this case the court is aware that Jacob Winding was representing Plaintiff *in pro per* at the time the complaint was filed in Stanislaus County Superior Court. Plaintiff was represented by counsel as of the time opposition was filed to Defendants' motion to dismiss, so the issue of Jacob Winding's authority to represent Top to Bottom Cleaning Service did not arise.  The court notes that recently Plaintiff's attorney of record has asked for, and been granted, permission to withdraw from the case.  Having not received any notice of substitution of counsel, the court

8

presumes Plaintiff is without counsel as of this writing.  As previously noted by the Magistrate Judge, to the extent Plaintiff in this case, Top to Bottom Cleaning Services, is a partnership, Jacob Winding is not authorized to undertake its representation in court.

　　　Second, the court has invalidated Plaintiff's theory that recovery can be had based on the fact that Defendants did not show that they possessed any interest in the promissory note.  In Winding v. NDEX West, the court also invalidated Plaintiff's theory that he was entitled to relief on the basis of a senior deed of trust.  Neither of these theories are viable under the facts of this case and the court will summarily dismiss any amendment that alleges claims for relief that are predicated on either theory.  Plaintiff will have 21-days from the date of this order to file any amendment.  Continuations of time to file an amended complaint will be strongly disfavored.

(Doc. 22, 19:10-20:1.)  The Court then specifically ordered that any amended complaint be filed not later than twenty-one days from the date of service of the order.  The Court further ordered that, if no amendment was filed within the allowed period, Defendants were to notify the court of Plaintiff's failure to amend and request that the case be closed.  (Doc. 22, p. 20, ¶ 4.)

　　　Plaintiff failed to file an amended complaint.  On July 29, 2011, Defendants filed a motion to dismiss for failure to obey a court order pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and scheduled a hearing on the motion to dismiss for September 9, 2011, before the Magistrate Judge.  On September 12, 2011, the court continued the hearing date until October 3, 2011, and transferred the hearing to the presiding District Judge.  On September 23, 2011, Plaintiff filed a motion for an extension of time to file an opposition to Wells Fargo's motion to dismiss.  (Doc. 33.)  On September 28, 2011, Wells Fargo filed an opposition to Plaintiff's motion for an extension of time.  (Doc. 35.)  On September 30, 2011, the Court issued an order dismissing the case, stating the following, in relevant part:

　　　The current spate of motions and oppositions has taken on procedural dimensions not originally intended by the court.  It was the court's intent merely to be reminded when the twenty-one day time period had passed so that an order administratively closing the case could be filed.  It was not the court's intention to instigate a series of derivative motions that do not get at the substantive issues presented by the court's June 27 Order.  At issue, from the court's perspective, is (1) whether Plaintiff is, or has been, able to secure representation, as previously pointed out by the Magistrate Judge, he is not entitled to represent the partnership that nominally instituted this action, and (2) whether Plaintiff has identified any legal theory that would not be summarily dismissed pursuant to the June 27 Order.  There is nothing before the court to indicate that Plaintiff has addressed, or can address, either of the issues identified by the court in its June 27 Order.

(Doc. 37.)  The court struck Plaintiff's motion to extend time to respond to Defendants' motion to dismiss as impertinent because "Plaintiff lacks capacity to represent Top To Bottom Cleaning

Services, a partnership." (Doc. 37, p. 2, ¶ 1.)  Further, the Court ordered that judgment be entered in favor of Defendants and directed the Clerk of the Court to close the case. (Doc. 37, p. 3, ¶ 5.)

On the basis of Mr. Bowers' declaration, Plaintiff seeks relief from judgment pursuant to Rule 60(b)(2), (3) and (6). Plaintiff asserts that Mr. Bowers' declaration was not reasonably available to him prior to October 2011 because he has been unable to locate Mr. Bowers.  Specifically, Plaintiff provided a declaration indicating that "[d]uring this entire period of the case, I have retained an investigation team to find Mr. Warner Bowers." (Doc. 43, ¶ 7.)  Plaintiff  also indicates that his "team contacted Mr. Warner Bower[s] on or about October 27, 2011, and upon being contacted he was cooperative." (Doc. 43, ¶ 8.)

1.     **Wells Fargo's Objection to the Declaration of Warner Bowers Should Be Sustained**

In support of Plaintiff's Rule 60 motion (which was filed as an opposition to Wells Fargo's motion for attorney's fees), Plaintiff submitted a declaration of Warner Bowers, which provides in relevant part:

> 1.     I was the legal owner of the Property located at 302 California Avenue, Modesto, California prior to transferring my property and all of its interest over to TTB Service Inc.
>
> 2.     I had an outstanding debt with the company TTB Services Inc. and in lieu of payment on the note I transferred all of my rights to the property to the company.
>
> 3.     At the time of transfer, the property was clear of any and all debts owed including but not limited to World Savings Bank.
>
> 4.     Any and all debt owed to World Savings Bank had been cured prior to me transferring my interest in the property to TTB Services, Inc.
>
> 5.     I currently do not owe World Savings Bank or any of its successors of interest.
>
> 6.     I was not contacted concerning this issue until recently and had I known this was an issue I would have come forward earlier to establish the truth.
>
> 7.     The information presented by the bank is of no consequence because the debt has already been cured.

(Doc. 44.) Plaintiff asserts that this declaration provides new and material evidence that requires the Court to reconsider the dismissal of his complaint and the subsequent judgment entered against him.

1    In its January 27, 2012, reply brief, Wells Fargo objects to the affidavit submitted by Mr.

2   Bowers.  (Doc. 53, 2:1 - 3:10.)  Wells Fargo argues that Mr. Bowers' statement is not an "affidavit"

3   because it was not notarized, and to the extent the statement may be considered a declaration, there

4   is nothing in the document demonstrating that it was Mr. Bowers who actually signed the statement.

5   Moreover, Wells Fargo objects to the submission of the statement on the grounds that (1) it lacks

6   foundation under Federal Rule of Evidence 602 as to Mr. Bowers' personal knowledge regarding

7   how the debt was "cured"; and (2) because the statement is offered for the truth of the matter asserted

8   – i.e., the debt of the borrower under the Note and Deed of Trust was cured prior to the initiation of

9   foreclosure proceedings – it is inadmissible hearsay pursuant to Federal Rule of Evidence 801(c).

10    Pursuant to Federal Rule of Evidence 602, a "witness may not testify to a matter unless

11   evidence is introduced sufficient to support a finding that the witness has personal knowledge of the

12   matter."  Fed. R. Evid. 602.  Wells Fargo's argument that Mr. Bowers' statement lacks personal

13   knowledge regarding the debt owed on the Loan is persuasive.  Mr. Bowers does not state how the

14   indebtedness was "cured."  His statement provides only conclusions as to the status of the Loan and

15   the underlying debt.  As Wells Fargo notes, the declaration does not state facts showing how Mr.

16   Bowers uses the term "cured" and whether he means the word in some other sense – i,e., that the

17   underlying debt was "cured" through transfer.  For example, Mr. Bowers does not state that he paid

18   the amount due on the loan, or how and when he paid the debt.  Absent facts indicating how the Loan

19   was "cured," personal knowledge cannot be inferred.  *See In re Kaypro*, 218 F.3d 1070, 1075 (9th

20   Cir. 2000) (where declarant *necessarily* has first-hand knowledge of the facts, personal knowledge

21   may be inferred).  Without proper foundation to establish how Mr. Bowers has personal knowledge

22   of  his assertions, his statements in paragraphs 3 through 5 are inadmissible and Wells Fargo's

23   objection on this ground should be sustained.[5]

24    In any event, as discussed below, even to the extent the Court considers these statements in

25   support of Plaintiff's Rule 60 motion, Mr. Bowers' declaration does not warrant relief from judgment.

26

27         [5] With regard to Wells Fargo's objection based on hearsay, the Court need not reach this argument.  The Court
notes, however, that the statement is not hearsay to the extent it is offered to show that Plaintiff has a viable *theory* of
28   recovery and a basis to amend, rather than being admitted as proof that the debt was "cured."

1          **2.       Plaintiff's Rule 60 Motion is Without Merit**

2          Rule 60(b)(2) provides that "the court may relieve a party or its legal representative from a

3    final judgment, order, or proceeding" based on "newly discovered evidence that, with reasonable

4    diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  The

5    moving party must show that the evidence is (1) newly discovered; (2) could not have been

6    discovered through due diligence; and (3) is of such a material and controlling nature as will

7    probably change the outcome.  *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d

8    208 (9th Cir. 1987).

9          Mr. Bowers' declaration does not meet the requirements of Rule 60(b)(2).  Evidence is not

10   considered newly discovered for purposes of Rule 60(b) if it was in the party's possession at the time

11   of judgment or could have been discovered with reasonable diligence.  *See Coastal Transfer Co. v.*

12   *Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987). Plaintiff does not assert that at the

13   time of judgment he was unaware of the substance of Mr. Bowers' declaration.  He asserts only that

14   he was not in contact with Mr. Bowers until October 27, 2011.  There is no showing that Plaintiff

15   was unaware of Mr. Bowers' belief that the debt was "cured."  *See Earth Island Institute v. Morse*,

16   2009 WL 4163846, at * 2 (E.D. Cal. Nov. 20, 2009) ("[Rule 60] allows for relief from judgment

17   based on "newly discovered evidence" rather than "newly-available evidence.").  Moreover, the lack

18   of facts in Plaintiff's declaration regarding his inability to contact Mr. Bowers does not establish

19   Plaintiff's diligence.

20         Additionally, Wells Fargo contends that Mr. Bowers' declaration is difficult to credit and

21   cites Moore's Federal Practice § 60.42[6] for the proposition that "[t]here is no reason to set aside

22   a judgment on the basis of evidence that could not be admitted at a new trial or, if admitted, would

23   be unconvincing."  Wells Fargo asserts that it "defies credulity to suggest that Mr. Bowers cured his

24   debt to Wells Fargo of $217,000.00 – sometime after May 27, 2009 – and then 'transferred all of

25   [his] rights in the property' to TTB Services shortly thereafter – December of 2009 – to satisfy a debt

26   of $75,000.00."  (Doc. 53, 6:26-7:1.)  Wells Fargo's argument in this regard is well taken; the

27   declaration is also difficult to credit because it contains conclusions rather than facts indicating how

28   the indebtedness in relation to the Property was "cured."  Evidence submitted in support of a Rule

1   60(b) motion for relief from judgment must be credible and admissible, and the declaration does not

2   meet this standard.  *See Aronson v. Dog Eat Dog Films, Inc.* 738 F. Supp. 2d 1104, 1120 (W.D.

3   Wash. 2010) ("The proffered evidence must be admissible and credible and 'must be of such a

4   material and controlling nature as will probably change the outcome.'" (quoting *Am. Cetacean Soc.

5   v. Smart*, 673 F. Supp. 1102, 1106 (D.D.C. 1987))).

6   Notwithstanding these deficiencies, the Court finds that the declaration is not material and

7   controlling such that it will change the outcome.  The complaint was dismissed and judgment was

8   entered because Plaintiff failed to timely comply with the June 27, 2011, order.  Plaintiff's belated

9   seizure upon a new theory to amend his complaint does not alter the circumstances under which the

10   complaint was dismissed – i.e., failure to timely amend the complaint within the limitations imposed,

11   which included obtaining counsel to represent the interests of Top to Bottom Cleaning Service.

12   There is no basis to grant relief from judgment pursuant to Rule 60(b)(2).

13   Plaintiff also fails to meet the standard for relief under Rule 60(b)(3) on the basis of alleged

14   fraud on the part of Wells Fargo.  To prevail on a Rule 60(b)(3) motion, "the moving party must

15   establish that a judgment was obtained by fraud, misrepresentation, or misconduct, and that the

16   conduct complained of prevented the moving party from fully and fairly presenting the case." *In re

17   M/V Peacock*, 809 F.2d 1403, 1404-05 (9th Cir. 1987) (citations omitted).  A moving party must

18   establish the fraud or other misconduct by clear and  convincing evidence.  *See England v. Doyle*,

19   281 F.2d 304, 309-10 (9th Cir. 1960).  Here, the judgment was issued due to Plaintiff's lack of

20   diligence in filing an amended complaint.  Mr. Bowers' declaration is not evidence that Plaintiff was

21   prevented from filing an amended complaint due to alleged fraud on the part of Wells Fargo.

22   Finally, as to Plaintiff's assertion that relief from the judgment should be granted under Rule

23   60(b)(6), this section "is to be used sparingly as an equitable remedy to prevent manifest injustice

24   and is to be utilized only where extraordinary circumstances" exist. *Harvest v. Castro*, 531 F.3d 737,

25   749 (9th Cir. 2008) (internal quotation marks and citation omitted).  "The rule is to be utilized only

26   where extraordinary circumstances prevented a party from taking timely action to prevent or correct

27   an erroneous judgment." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th

28   Cir. 1993).  Plaintiff's failure to file an amended complaint was the basis of the Court's dismissal and

entry of judgment in favor of Defendants.  Plaintiff's lack of diligence in amending his complaint is not an extraordinary circumstance that merits relief under Rule 60(b)(6).

In sum, Plaintiff's request for relief pursuant to Rule 60 is without merit.  Accordingly, the Court recommends that Plaintiff's Rule 60 motion be denied with prejudice.

## C.    Wells Fargo's Motion for Attorney's Fees Should Be Granted

### 1.    Wells Fargo's Motion is Timely

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law."  *See Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007).  The procedure for filing a motion for attorney's fees is generally governed by Federal Rule of Civil Procedure 54(d)(2), which provides that such motions shall be "filed no later than 14 days after entry of judgment."  Fed. R. Civ. P. 54(d)(2)(B)(i).  The rule provides, however, that the fourteen-day limitation does not apply if a statute or court order provides otherwise.  Fed. R. Civ. P. 54(d)(2)(B). The United States District Court for the Eastern District of California's Local Rule ("Local Rule") 293 provides that motions for attorney's fees to prevailing parties pursuant to statute shall be filed within twenty-eight (28) days after the entry of final judgment.  *See Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1257 (9th Cir. 1997) (Local rules are standing orders for purposes of Rule 54(d)).

Judgment in this case was entered on September 30, 2011, and Wells Fargo's motion for attorney's fees was filed on October 28, 2011.  Therefore, Wells Fargo's motion for attorney's fees is timely under Local Rule 293.  *Eastwood*, 123 F.3d 1249, 1257 (9th Cir. 1997); *see also Winding v. NDEX, West, LLC*, No. 1:10-cv-02026-AWI-DLB, 2011 WL 5244335, at *3 (E.D. Cal. Nov. 1, 2011).

### 2.    Wells Fargo is Eligible for an Award of Attorney's Fees

Under California law, California Civil Code § 1717 is the applicable statute when determining whether and how attorney's fees should be awarded under a contract.  *Sears v. Baccaglio*, 60 Cal. App. 4th 1136, 1157 (1998).  Civil Code Section 1717 states that

> [i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be

the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs . . . . Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

Cal. Civ. Code § 1717(a).  "To be a prevailing party, the party must have received an enforceable judgment on the merits or a court-ordered consent decree." *U.S. v. Milner*, 583 F.3d 1174, 1196 (9th Cir. 2009).  An involuntary dismissal, "except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 - operates as an adjudication on the merits."  Fed. R. Civ. P. 41(b).

Wells Fargo argues that it is a prevailing party and is eligible for an award of attorney's fees under Section 1717 pursuant to the terms of the 2007 Note and the 2007 Trust Deed.  The 2007 Trust Deed contains a fee clause at Paragraph 7, which provides as follows:

> ### *Lender's Right to Protect its Rights in the Property*
> If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceedings in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property.  Lender's actions may include, without limitation, appearing in court, paying reasonably attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs Lender must give me notice before Lender may take any of these actions.  Although Lender may take action under this Paragraph 7, Lender does not have to do so.  Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.  I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes . . . .

At Section 7(E), the Note provides as follows:  "Payment of Lender's Costs and Expenses: The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by law.  Those expenses may include, for example, reasonable attorneys' fees and court costs."  (Doc. 41, Exh. A, p. 4, Section 7(E).)

In the opposition to Wells Fargo's motion for attorney's fees, Plaintiff asserts that the motion is untimely under Federal Rule of Civil Procedure 54(d)(2)(B)(i) because it was not filed within 14

1  days from the entry of judgment.  (Doc. 50, 5:16-26.)  Plaintiff further argues that Wells Fargo

2  reversed the Trustee Sale of the Property, rendering all matters moot.  (Doc. 50, 5:27-28.)[6]

3       As Plaintiff's complaint was involuntarily dismissed and judgment was entered in Wells

4  Fargo's favor, Wells Fargo is the prevailing party.  Further, under Section 1717, Wells Fargo is

5  permitted to seek fees pursuant to the language contained in the 2007 Trust Deed and the Note.  As

6  the Court stated in *Winding v. NDEX, West, LLC*, "[b]eyond Plaintiff's contention as to the timeliness

7  of Defendants' motion, there is no real dispute that Defendants prevailed and that Defendants are

8  eligible under the terms of the Promissory Note and Deed of Trust to be compensated for attorneys'

9  fees expended to defend their interest in the Property."  2011 WL 5244335, at *4.

10       **3.     Calculation of the Amount of Attorney's Fees to be Awarded**

11            **a.     Legal Standard**

12       An award of reasonable attorney's fees is determined through the hybrid lodestar multiplier

13  approach.  *Van Gerwen v. Guaranteed Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000);

14  *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999); *cf. Ketchum v. Moses*, 24 Cal.

15  4th 1122, 1133-36 (2001) (discussing the lodestar approach in California).  The Ninth Circuit has

16  articulated the hybrid loadstar approach as follows:

> The lodestar/multiplier approach has two parts.  First a court determines the
> "lodestar" amount by multiplying the number of hours reasonably expended on the
> litigation by a reasonably hourly rate.  *See D'Emanuele [v. Montgomery Ward & Co.,
> Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990)]; *Hensley [v. Eckerhart*, 461 U.S. 424,] 461
> (1983).  The party seeking an award of fees must submit evidence supporting the
> hours worked and the rates claimed.  *See Hensley*, 461 U.S. at 433.  A district court
> should exclude from the lodestar amount hours that are not reasonably expended
> because they are "excessive, redundant, or otherwise unnecessary."  *Id.* at 434.
> Second, a court may adjust the lodestar upward or downward using a "multiplier"
> based on factors not subsumed in the initial calculation of the lodestar.  [footnote
> omitted]  *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward
> multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461
> U.S. at 434 n. 9 (noting that courts may look at "results obtained" and other factors
> but should consider that many of these factors are subsumed in the lodestar
> calculation).  The lodestar amount is presumptively the reasonable fee amount, and
> thus a multiplier may be used to adjust the lodestar amount upward or downward
> only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the
> record and detailed findings by the lower courts" that the lodestar amount is

---

[6] Wells Fargo responds that Plaintiff's assertion that the Trustee Sale of the Property has been reversed is disingenuous in that the sale of the Property has been confounded by "the steady bankruptcy filings by persons listed in the partnership agreement of Top to Bottom Cleaning Service."  (Doc. 53, 7:4-10; *see also* Doc. 54, Exhs. F-I )

unreasonably low or unreasonably high. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041,1045 (9th Cir. 2000).

The fee applicant "has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Blum*, 465 U.S. at 896 n.11; *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005); *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). The Ninth Circuit has further explained that,

> [o]nce the number of hours is set, "the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986).] this determination "is not made by reference to rates actually charged by the prevailing party." *Id.* The court should use the prevailing market rate in the community for similar services of lawyers "of reasonably comparable skill, experience, and reputation." *Id.* at 1210-11. Either current or historical prevailing rates may be used. *Missouri v. Jenkins*, 491 U.S. 274, [ ] (1989); *Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir. 1984). The use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable; the district court must look to the "totality of the circumstances and the relevant factors, including delay in payment." *Jordan* [ *v. Multnomah Cnty.*], 815 F.2d [1258, 1262 (9th Cir. 1987).]

*D'Emanuelle*, 904 F.2d at 1384, *overruled on other grounds by Burlington v. Dague*, 505 U.S. 557 (1992). The "relevant legal community" in the lodestar calculation is generally the forum in which the district court sits. *Mendenhall v. NTSB*, 213 F.3d 464, 471 (9th Cir. 2000); *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997); *Schwarz*, 73 F.3d at 906.

**b.   Analysis**

**(i)   Attorneys Rendering Services**

Wells Fargo lists the following attorneys as having rendered billable services in the defense against Plaintiff's action:

1.   Mark T. Flewelling, J.D. ("MTF"), leading attorney and partner citing 30 years experience in litigating business and banking cases in federal and state courts (Doc. 40-1, Exh. A, ¶ 7(a));

2.      Daniel Armstrong, J.D. ("DAA"), citing one year experience representing financial institutions in federal and state courts; (Doc. 40-1, Exh. A, ¶7(b)); and

3.      Jeremy Shulman, J.D. ("JES"), citing nine years experience in litigating business and commercial disputes, including real estate (Doc. 40-1, Exh. A, ¶ 7(c)).

### (ii)      Time Expended on the Litigation

Exhibit A to the Declaration of Mark T. Flewelling filed in support of the motion for attorney's fees (Doc. 40-1), provides legal invoices for services rendered on a monthly basis beginning on March 7, 2011, and ending on September 30, 2011.  The Court notes that all paralegal time was deducted from the net fees requested.  (Doc. 40-1, p. 5, ¶ 10.)

The Court has reviewed the invoices provided by Wells Fargo and finds that the categories of activities generally track Wells Fargo's responses to Plaintiff's pleadings.  There are three discrete time entries, however, that should be disallowed.  The net fees requested include billing entries by Mr. Christopher A. Carr for 0.30 hours expended on June 24, 2011, 0.30 hours expended on July 8, 2011, and 0.3 hours expended on September 2, 2011.  (Doc. 41-1, Exh. A, p. 22, 25, 30.)  Neither of the declarations of Mr. Flewelling and Mr. Armstrong filed in support of Wells Fargo's motion for attorney's fees identifies Mr. Carr as one of the attorneys who performed work on this case, nor do the declarations offered in support of the motion for attorney's fees provide information that supports Mr. Carr's billing rate of $330 per hour. (*See* Doc. 40-1, p.3, ¶ 7; Doc. 48-1, p. 3, ¶ 7.)  For these reasons, Mr. Carr's time expenditures should not be awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (The party seeking an award of attorney's fees bears the burden of establishing entitlement to an award and documenting the time expended and the hour rates).

Additionally, the net fees requested include a time entry billed by Mr. Flewelling to "review documents filed with 9th Circuit (.30)." (Doc. 40-1, Exh. A, p. 30.)  An appeal has not been filed in this case; therefore, this time expenditure does not appear related to this case.  This 0.30 hours should be disallowed.

Mr. Armstrong states by declaration that he expended 8.0 hours preparing the motion for attorney's fees and the original declaration and additional fees in preparation of the motion amounted

18

to $2,120.00 (8 x $265).  (Doc. 48-1, ¶ 13.)  Eight hours expended on the motion appears reasonable and should be awarded; the rate at which this time should be compensated is addressed below.  *See Serrano v. Unruh*, 32 Cal. 3d 621, 631 (1982) ("the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award").

For the foregoing reasons, the Court recommends the approval of the following number of hours billed per attorney:

| Hours Expended by Attorney Per Month | Mr. Flewelling | Mr. Armstrong | Mr. Shulman |
|---|---|---|---|
| March 2011 | 2.00 | 7.80 | 2.30 |
| April 2011 | 3.40 | 15.30 | 0.40 |
| May 2011 | 0.20 | 19.50 | 0.00 |
| June 2011 | 0.60 | 2.60 | 0.00 |
| July 2011 | 1.50 | 9.50 | 0.00 |
| August 2011 | 0.00 | 1.00 | 0.00 |
| September 2011 | 0.60 | 10.60 | 0.00 |
| October 2011 | 0.00 | 8.00 | 0.00 |
| Total: | 8.30 | 74.30 | 2.70 |

**(iii)   Rates of Compensation**

Mr. Flewelling requests a rate of $350 per hour and Mr. Armstrong requests a rate of $265 per hour for work performed after December 31, 2010.  Finally, Mr. Shulman requests a rate of $280 per hour.  The court recently considered these rates in a related case, *Winding v. NDEX West, LLC,* where the court determined that a rate of $325 per hour for work performed by Mr. Flewelling in 2010 and 2011 was within the range of rates for the services of a lead attorney with 30 years of experience in the Fresno area.  2011 WL 5244335, at *5.  The Court also determined that Mr. Armstrong's requested rate for 2011 was not supportable and reduced it to $225 per hour.  The Court therefore recommends that a rate of $325 per hour for time expended by Mr. Flewelling be approved

and a rate of $225 per hour for time expended by Mr. Armstrong be approved.  Further, the Court also recommends that a rate of $280 per hour for time expended by Mr. Shulman be approved.

As it relates to a higher fee award due to the complexity of the action, the court held in *Winding v. NDEX West, LLC* as follows:

> To the extent Defendants look to the complexity of Plaintiff's action to justify higher fees, the court finds there is nothing about this case that suggests an unusual or novel legal challenge.  Although Plaintiff's frequent and sometimes imaginative pleadings have necessitated more work than necessary, the court has found that, for the most part, the legal propositions invoked have been usual and well settled.

2011 WL 5244335, at *5.

Here, the legal issues are essentially the same as those presented in *Winding v. NDEX West, LLC,* and it is recommended that no "premium" rate of compensation be awarded based on novelty or legal difficulty in this case.

### c.    Conclusion

For the reasons stated above, the following time and rates are recommended for an award of fees:

| Attorney | Hours | Hourly Rate | Total Award |
|---|---|---|---|
| Mr. Flewelling | 8.30 | $325 | $ 2,697.50 |
| Mr. Armstrong | 74.30 | $225 | $16,717.50 |
| Mr. Shulman | 2.70 | $280 | $   756.00 |
|  |  | **Total:** | **$20,171.00** |

### D.    Jacob Winding and Top to Bottom Cleaning Service Should Be Held Jointly and Severally Liable for Attorney's Fees

Wells Fargo's motion for attorney's fees seeks to impose attorney's fees on Plaintiff Jacob Winding.  Because the action was brought by "Jacob Winding dba Top to Bottom Cleaning Service," the Court requested that Wells Fargo provide a supplemental brief addressing whether Wells Fargo was asserting its fee request against Jacob Winding as well as Top to Bottom Cleaning Service.

Wells Fargo filed a supplemental brief asserting that, although Mr. Winding filed the complaint on behalf of himself doing business as Top to Bottom Cleaning Service, he "continues to

prosecute this case in his individual capacity." (Doc. 48, 1:24.) Wells Fargo further contends that, while Mr. Winding has been informed by the court on numerous occasions that he may not prosecute this action on behalf of Top to Bottom Cleaning Service, he has continued to prosecute this action without counsel which "demonstrates his intent to pursue this action in his individual capacity." (Doc. 48, 2:12-21.) Wells Fargo clarified in its supplemental brief that it seeks an award of attorney's fees against both Mr. Winding and Top to Bottom Cleaning Service.

Plaintiff filed a response to Wells Fargo's supplemental brief asserting "Plaintiff Jacob Winding . . . is inter-changeable with the unincorporated business called Top to Bottom Cleaning Service. The unincorporated business exists by and through Mr. Winding as to say they are one entity and does not meet the requirements of a Partnership." (Doc. 50, 2:13-15.) Plaintiff further contends that he "is the party of interest to this law suit as it applies to Federal Rules of Civil Procedure 17(a). Therefore holding true is that Plaintiff is and will be materially affected by the outcome of this case." (Doc. 50, 2:26-3:1.)

Plaintiff asserts that he has standing and is a proper party to the suit; notably, he has filed briefs in his individual capacity and contends that he and the entity Top to Bottom Cleaning Service are one in the same. Plaintiff has clearly pursued this action to further his own alleged interest in the Property under the quitclaim deed transferring the rights to the Property to Plaintiff as a sole proprietor under the fictitious name of TTB Services, Inc. (Doc. 8, Exh. I) and under the grant deed transferring the Property to Plaintiff as a partner or principal partner of Top to Bottom Cleaning Service (Doc. 54, Exh. B). Thus, an award of attorney's fees against both Mr. Winding and Top to Bottom Cleaning Service is appropriate.[7] *Saucedo v. Mercury Sav. & Loan Ass'n*, 111 Cal. App. 3d 309, 314-15 (1980) (practical liability of non-assuming grantee under deed of trust is sufficient to call into play remedial reciprocity established by Section 1717); *see also Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 128-29 (1979) (Section 1717 sufficiently broad to include persons who had not signed the contract).

---

[7] Federal courts also routinely enter default-judgment orders that include an award of attorney's fees against non-appearing and unrepresented entity defendants. *See, e.g., Mantic Ashanti's Cause ex rel. Pinnock v. Darwish Plaza*, No. 05-CV-1615 WQH, 2006 WL 1360969, at *11 (S.D. Cal. Apr. 21, 2006).

1    To the extent the complaint was filed on behalf of the entity and its interests, the entity is

2    subject to attorney's fees even though it is without counsel in much the same way an unrepresented

3    artificial entity may be subject to attorney's fees in default judgment.  *See Dr. JKL Ltd v. HPC IT*

4    *Education Center*, 749 F. Supp. 2d 1038, 1051-52 (N.D. Cal. 2010).

5    The Court, therefore, recommends that Plaintiff Jacob Winding and Top to Bottom Cleaning

6    Service be held jointly and severally liable for the awarded attorney's fees.[8]  *See Rebis v. Universal*

7    *Cad Consultants, Inc.*, No. C-96-4201 SC,1999 WL 1000435 (N.D. Cal. Oct. 27, 1999) (ordering

8    defendants jointly and severally liable for an award of attorney's fees).

9    ### IV.    CONCLUSION AND RECOMMENDATION

10    For the reasons stated above, IT IS HEREBY RECOMMENDED that:

11    1.    Wells Fargo's motion for attorney's fees BE GRANTED in the amount of $20,171.00

12    against Plaintiff Jacob Winding and Top to Bottom Cleaning Service jointly and

13    severally; and

14    2.    Plaintiff's Rule 60(b) motion BE DENIED with prejudice.

15    These findings and recommendations are submitted to the district judge assigned to this

16    action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one

17    (21) days of service of this recommendation, any party may file written objections to these findings

18    and recommendations with the Court and serve a copy on all parties.  Such a document should be

19    captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any responses to

20    objections shall be filed and served on all parties within fourteen (14) days after service of the

21    objections.  The district judge will review the magistrate judge's findings and recommendations

22    pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within

23    ///

24    ///

25    ///

26

27    [8] Wells Fargo asserts that attorney's fees should be bifurcated between Jacob Winding and Top to Bottom Cleaning Services for their proportionate share of the fees and suggests apportioning the fees to Top to Bottom Cleaning Service for work performed while Plaintiff was represented by counsel.  However, dividing the time expended by Wells Fargo's counsel to determine a proportionate share in this manner is too general and difficult to substantiate.

28

the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   **February 23, 2012**                          /s/ **Sheila K. Oberto**
                                                      UNITED STATES MAGISTRATE JUDGE